IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RHEA W.,[1]

        Plaintiff,

COMMISSIONER OF SOCIAL SECURITY,[2]

        Defendant.

Case No. 6: 17-cv-01895-AA
**OPINION AND ORDER**

AIKEN, District Judge:

    Plaintiff Rhea W. brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Nancy A. Berryhill's term as the Acting Commissioner of the Social Security Administration ended on November 17, 2017, and a new Commissioner has not yet been appointed. The official title of the head of the Social Security Administration is the "Commissioner of Social Security." 42 U.S.C. § 902(a)(1). A "public officer who sues or is sued in an official capacity may be designated by official title rather than name." Fed. R. Civ. P. 17(d). This Court, therefore, refers to defendant only as Commissioner of Social Security.

..or the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for immediate award of benefits.

## BACKGROUND

Plaintiff applied for DIB on August 16, 2013, and she filed for SSI on August 12, 2014. Plaintiff alleged disability beginning August 18, 2012, due to a history of cardiac catheterization and triple bypass surgery, diabetes mellitus, migraine headaches, congenital hearing loss, and depression. Plaintiff's applications were denied initially and upon reconsideration, with the reconsideration denial dated July 29, 2014. Plaintiff appeared before an Administrative Law Judge ("ALJ") at a hearing held June 23, 2016. At the hearing, plaintiff testified and was represented by counsel. A medical expert and a vocational expert also testified. On September 20, 2016, the ALJ denied plaintiff's DIB and SSI applications, finding that she was not disabled on September 23, 2016. After the Appeals Council denied review, plaintiff filed the present complaint before this Court.

## STANDARD OF REVIEW

The Court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue,* 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm 'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quotation marks omitted)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 279 F.3d 453, 459 (9th Cir. 2001). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and the Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). However, a reviewing court may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1225-26 (citing *SEC v. Cheney Corp.*, 332 U.S. 194, 196 (1947)).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4); 416.920(a)(4). At step one, the ALJ found that

plaintiff had not engaged in "substantial gainful activity" since the alleged disability onset date. Tr. 21; 20 C.F.R. §§ 404.1520(a)(4)(i), (b); 416.920(a)(4)(i), (b). At step two, the ALJ found that plaintiff had the following severe impairment as of the alleged onset date: congestive heart failure with a history of cardiac catheterization and triple bypass surgery, diabetes mellitus, migraines headaches, congenital hearing loss, and depression. Tr. 21; 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c). At step three, the ALJ determined that plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 22; 20 C.FR. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d). The ALJ then assessed plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e); 416.920(e). The ALJ found that plaintiff had

> the residual function capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the following: she is unable to climb ladders, ropes, and scaffolds. She is able to tolerate a moderately noisy work environment. Mentally, due to pain, side effects of medication and mental impairments, the claimant can understand, remember, and carry out only short and simple instructions. She can only make simple work-related judgments and decision. Socially, she can maintain no more than occasional interactive contact with the public. She is able to maintain frequent proximity contact with co-workers or supervisor.

Tr. 24. At step four, the ALJ concluded that plaintiff could not perform her past relevant work as a receptionist. Tr. 30; 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). The ALJ continued to step five and found that plaintiff could perform work existing in the national economy; specifically, plaintiff could work as mail sorter, price marker, and electronics worker. Tr. 31; 20 C.F.R. §§ 404.1520(a)(4)(v), (g)(1).

## DISCUSSION

On appeal plaintiff contends that the ALJ erred by (1) failing to provide specific, clear, and convincing reasons supported by substantial evidence to discredit plaintiff's subjective symptom testimony, (2) discounting the medical opinion of Dr. Seligman, (3) rejecting the opinions of Theo Orchard, PA and Jeremy Springer, LCSW, and (4) failing to incorporate all medical findings regarding her shoulder impairment into her RCF. I address each argument in turn.

### I.   *Plaintiff's Subjective Symptom Complaints*

I begin with plaintiff's argument that the ALJ failed to provide legally sufficient reasons to reject her testimony about the extent of her symptoms and functional limitations. When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

The ALJ makes such a determination amidst a two-step process that, first, evaluates the existence of an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms and, second, addresses the intensity, persistence, and limiting effects of the alleged symptoms based on an examination of the entire record. 20 C.F.R §§ 404.1529(a), (c)(l); 416.929(a), (c)(l). Within this analysis, the ALJ has discretion to dismiss portions of the plaintiff's testimony so long as the adjudicator provides "clear and convincing reasons" for doing so. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015)

(quoting *Lingenfelter v. Astrue*, 504 F.3d 1029, 1036 (9th Cir. 2007)). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests that the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Moreover, the reasons proffered by the ALJ for discrediting a claimant's testimony must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the [testimony]." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhardt*, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ discussed several reasons that she found plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms not entirely consistent with the medical evidence and other evidence in the record. *See* Tr. 26.

### A. *Migraines*

First, the ALJ observed that the medical evidence did not support plaintiff's reports of disabling migraines. Tr. 26, 30. At the hearing, plaintiff testified that she had to miss work on several occasions due to the severity of her migraines. Tr. 52-53. Plaintiff further testified that when she first stopped working her headaches diminished, but "now they're back and it's anywhere from two to five days a week . . . ." Tr. 53. Plaintiff reported that these migraines lasted from "a couple of hours to a couple of days." *Id.* Her migraines sometimes improved with Excedrin, but sometimes required Oxycodone or injections. Tr. 52. The ALJ noted plaintiff's failure to routinely report migraines during office visits and an absence of documented

debilitating migraines in plaintiff's "more recent treatment notes" as evidence that plaintiff's migraines were not as debilitating as she described. Tr. 26.

As evidence of plaintiff's failure to routinely report migraines the ALJ cited six office visits where the plaintiff failed to report migraines. *Id.*[3] Additionally, The ALJ claimed that the plaintiff's subjective symptom testimony was not credible because plaintiff had not reported "an inability to function" or the presence of debilitating migraines during office visits leading up to her hearing. *Id.* To support this conclusion, the ALJ noted a single April 2016 hospital visit. Tr. 27, 695-704.

However, the ALJ overlooked thirty other office visits where the plaintiff complained of headaches or migraines. *See* Tr. 431, 468, 477, 501, 569, 571, 592, 610, 617, 622, 634, 638, 643, 647, 659, 668, 688, 682-83, 712, 714, 716, 741, 746, 749, 791, 848, 903, 931-32, 952, 967, 978, 995, 100, 1035, 1057, 1060, 1075. In addition, plaintiff reported and was treated for migraines during January 2016, February 2016, March 2016, April 2016, May 2016, and June 2016. Tr. 672, 682-83, 688, 712, 714, 716, 931-32, 995, 1000, 1035, 1057, 1060. During several of these visits, the patient described her migraine headaches as resistant to oxycodone and other pain medications. Tr. 682-83, 1057. In fact, on one occasion, plaintiff's migraine was so severe that she reported being unable to do laundry. Tr. 688.

"Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for

---

[3] In her decision, the ALJ cited to seven office visits. One of these was an April 2016 hospital visit for chest pain where the plaintiff failed to report migraines. Tr. 695-704. However, after plaintiff was transferred to a different hospital on that same day, plaintiff did report migraines. Tr. 1000, 1035.

concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)). In this case, the ALJ cherry picked six office visits that occurred over the course of three years in which plaintiff failed to report migraine headaches. After considering the plaintiff's entire medial record, it is clear that plaintiff routinely reported migraines during office and hospital visits and experienced a few isolated instances of improvement. It is also clear that the ALJ cherry picked the record regarding plaintiff's April 2016 hospital visit and ignored plaintiff's reports of severe and occasionally debilitating migraines in all six months leading up to the hearing.

By cherry picking the record, the ALJ did not consider the medical record as a whole and failed to provide substantial evidence in the record to support her decision. Therefore, the ALJ improperly rejected plaintiff's migraine symptom testimony.

### B. *Diabetes*

Second, the ALJ addressed plaintiff's testimony regarding the severity of her diabetes. During her hearing, plaintiff testified that she tested her blood sugars daily and was taking her diabetes medications as prescribed. Tr. 61. Plaintiff further reported that while her A1C remained high at the time of the hearing, it was improving. *Id.* During office visits, plaintiff frequently reported feeling shaky and fatigued. Tr. 437, 440, 555, 559, 643, 650. She reported trouble staying awake due to hypoglycemia "a couple times a week". Tr. 425. The ALJ found plaintiff's general claim that "her ability to work was limited due to symptoms related to her diabetes" inconsistent with the evidence in the record. Tr. 26.

Specifically, the ALJ noted that when plaintiff took her medications as prescribed and followed a healthy diet her diabetes remained well-controlled. *Id.*; *See*

Tr. 589 (plaintiff reported well-controlled blood sugar after restarting her medications four months before), 617 (patient taking diabetes medications and "doing well"), 669 (plaintiff reported that she was strictly taking her medications and was "doing well"). However, this reasoning fails to consider plaintiff's long-term and reoccurring inability to afford the cost of her diabetes medication and nutritious food. While an ALJ may rely on a plaintiff's non-compliance with effective treatment to discount her testimony, a claimant's non-compliance is excusable when the claimant cannot afford the treatment. *Id.*; *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("We certainly agree with other circuits that a disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment.").

Substantial evidence in the record supports plaintiff's assertion that homelessness, lack of transportation, and the cost of medications prevented her from consistently complying with her prescribed treatment. Tr. 334 (In August 2012, plaintiff reported non-compliance with medications due to financial issues), 406 (September 2013, plaintiff had "no income and is on food stamps" and did not qualify for the Oregon Health Plan), 562 (August 2014, plaintiff was "homeless again" with "limited means to pay for good food and lack of transportation for visits"), 650 (December 2015, "diet depends on money for food"). While the record also shows that there were periods when plaintiff reported consistently taking her medications, Tr. 589, 660, 669, these periods are intermixed with reports of homelessness and financial instability.

By failing to account for plaintiff's excusable inability to comply with effective treatment, the ALJ improperly rejected plaintiff's diabetes symptom testimony.

## C.  *Cardiac Symptoms*

Next, the ALJ found that the medical evidence and plaintiff's daily activities did not support plaintiff's testimony regarding the intensity of her cardiac symptoms. Tr. 26-27. Plaintiff testified to frequent, unexplained chest pain. Tr. 60. She further testified that starting Ranexa seemed "to help quite a bit with the chest pain." *Id.* The ALJ noted plaintiff's history of normal physical examinations and stress tests, as well as cardiopulmonary examinations and echocardiograms that failed to show "severe abnormalities." Tr. 26-27. In addition, the ALJ found that the record did not describe an inability or reduced ability to function. Tr. 27. These are valid reasons to discount plaintiff's symptom testimony. *Batson*, 359 F.3d at 1196 ("Graphic and expansive" pain symptoms could not be explained on objective, physical basis by claimant's treating physician). Furthermore, the ALJ's reasoning is supported by substantial evidence in the record. *See* Tr. 586 (October 2015, normal stress test), 593-610 (November 2015, normal EKG, ECG, and chest x-ray), 704, 1040 (April 2016, normal chest x-ray and ECG), 1000, 1018 (Dr. Gandhok reported that all plaintiff's "cardiac tests" were negative, including the cardiac catheterization); *see also* Tr. 936-39, 586-610, 704, 695-99.

Plaintiff argues that the ALJ failed to account for her financial situation. Indeed, the ALJ erroneously noted that plaintiff's "sudden bypass surgery was precipitated by a year without taking her cardiovascular medications." Tr. 26. As explained above, if a plaintiff offers a good reason for non-compliance with treatment, then the non-compliance cannot be used to discredit the plaintiff's testimony. *Smolen*, 80 F.3d at 1285. There is substantial evidence in the record that plaintiff could not afford any of her medications in 2012. Tr. 331, 334, 346.

However, the ALJ's reliance on plaintiff's excusable non-compliance with her medication regime is harmless error because the ALJ provided other valid, clear, and convincing reasons for discounting plaintiff's cardiac testimony. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("[T]he relevant inquiry . . . is whether the ALJ's decision remains legally valid, despite such error."); *see also Batson*, 359 F.3d at 1197 (the overall credibility decision may be upheld if not all of the ALJ's reasons for rejecting a claimant's testimony are upheld). As mentioned, these reasons include inconsistency with objective medical evidence and a lack of evidence supporting an inability to function. Accordingly, the ALJ properly discounted plaintiff's testimony regarding the severity of her cardiac symptoms.

## D. *Hearing*

The ALJ also concluded that the plaintiff's hearing condition was not disabling. Tr. 27. Plaintiff testified that she has had issues hearing "pretty much all [her] life," though her hearing had worsened with age. Tr. 55. Plaintiff testified that she had surgery for her hearing condition that "kind of helped at first" but "it didn't last very long." Tr. 56. Plaintiff stated that her hearing would impact her ability to work, especially if her work included being on the phone. Tr. 56-57. Plaintiff explained that she had not sought treatment for her hearing loss in the past because she did not have insurance to cover treatment. Tr. 56. Following the hearing, plaintiff underwent an auditory examination at the behest of the ALJ. Dr. Nishioka, the examining physician, concluded that plaintiff would be able to use a telephone, avoid workplace hazards, understand oral instructions, and communicate simple information with hearing amplification. Tr. 1084.

The ALJ did not find plaintiff's testimony regarding the limiting effects of her hearing condition credible. The ALJ based her conclusion on Dr. Nishioka's assessment that plaintiff's hearing loss could be effectively treated with hearing aids. Tr. 1084. Again, plaintiff argues that the ALJ failed to account for her inability to afford treatment, specifically hearing aids. However, the record does not support this contention. While the record demonstrates that plaintiff has had difficulties obtaining hearing aids in the past, plaintiff reported to Dr. Nishioka in August 2016 that she was "in the process of trying to obtain hearing aids through DHS." Tr. 1076. This statement suggests that plaintiff had not yet been denied coverage of hearing aids and therefore, may have been able to obtain them at free or no cost. Therefore, the ALJ properly relied on plaintiff's inadequately explained failure to seek treatment when assessing the plaintiff's credibility regarding her hearing condition.

### E. *Mental Health*

Finally, the ALJ discounted the plaintiff's testimony regarding the severity, persistence, and limiting effects of her anxiety and depression. Tr. 57, 59. Plaintiff testified that her anxiety and depression prevented her from leaving her house three or four times a week and occasionally from getting out of bed. Tr. 59-60. Usually, plaintiff's anxiety was triggered by crowds, but after starting Ranexa plaintiff felt anxiety when alone in her own home. Tr. 57-58. The ALJ reasoned that plaintiff's testimony regarding her mental health symptoms was inconsistent with the medical evidence, specially that plaintiff was responding well to her mental health treatment. Tr. 28. This is a valid reason supported by substantial evidence in the record to reject plaintiff's testimony. *See* Tr. 550 (medication made her "less moody" and "much improved with stable housing and starting to see effects of fluoxetine...."), 571 ("had

only one panic attack which lasted 10 min. in the past several weeks"; "making some significant progress."); *see also* Tr. 565 ("[c]lient was able to improve anxiety and depression slightly around Thanksgiving..."),715-716, 657, 665 (plaintiff reported "less anxiety" and that she was "feeling better").

The ALJ also concluded that plaintiff's testimony regarding her mental health symptoms was inconsistent with her reported activities of daily living. Tr. 29. Specifically, the ALJ pointed to plaintiff's ability to prepare food, shower, do laundry, and use her phone and computer. Tr. 29. (citing Tr. 55, 430-34). The ALJ's reliance on plaintiff's activities of daily living in this instance was improper. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("many at home activities are not easily transferable to what may be the more grueling environment of the workplace..."). Plaintiff's ability to cook and do household chores has little relation to the mental health symptoms that prevented her from leaving her home or being around groups of people. However, the ALJ's reliance on plaintiff's improvement during treatment is a clear, convincing reason supported by substantial evidence in the record. Therefore, the ALJ properly discounted part of plaintiff's testimony regarding the limiting effects of her anxiety and depression.

In sum, the ALJ properly discredited plaintiff's subjective symptom testimony regarding her cardiac symptoms, hearing, and mental health. However, the ALJ erred by discounting plaintiff's testimony regarding the severity, persistence, and limiting effects of her migraine headaches and diabetes.

II.  ***Medical Opinion Evidence***

Plaintiff challenges the ALJ's decision to give partial weight to Dr. Seligman's opinion that headaches could cause functional limitations. Tr. 28. The ALJ must explicitly reject medical opinions, or set forth specific, legitimate reasons for crediting one medical opinion over another. *Nguyen v. Chafer,* 100 F.3d 1462, 1464 (9th Cir. 1996). An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison,* 759 F.3d at 1013.

Plaintiff argues that the ALJ should have afforded more weight to Dr. Seligman's testimony that migraine headaches could cause functional limitations based on the frequency, severity, and degree of other symptoms of the migraines. Tr. 65. The ALJ found that Dr. Seligman's statement regarding migraines was inconsistent with the record because "the record does not include objective evidence that supports that [plaintiff] experienced debilitating headaches up to five (5) days a week." Tr. 28. Not only is the ALJ's reasoning lacking any citation to the medical evidence, it is also contradicted by the record. There is evidence in the record to support plaintiff's testimony regarding the frequency and severity of her headaches. Tr. 688 (migraine lasting two to three days), 668 (having headaches "most days"), 643 (migraines two times per week), 610 (nearly daily headaches), 634 (one to two headaches every week). Because of the evidence in the record to the contrary, the ALJ's opinion is not supported by substantial evidence in the record.

However, the ALJ's error is harmless. Giving full credit to Dr. Seligman's opinion regarding the possibility of limitations due to migraine symptoms would not have changed the ALJ's overall determination. After all, the improperly discredited testimony consisted of a generally applicable comment that migraines *can* impose limitations in certain circumstances, not that plaintiff's migraine symptoms imposed functional limitations in this case. *See* Tr. 65. In fact, Dr. Seligman testified that he could not find any evidence in the record that plaintiff had any functional limitations due to her migraine headaches. Tr. 64.

III.  ***Non-Medical Opinion Evidence***

Plaintiff asserts that the ALJ erred in partially discounting the opinion testimony of Theo Orchard, physician's assistant, and Jeremy Springer, licensed clinical social worker. "In addition to considering the medical opinions of doctors, an ALJ must consider the opinions of medical providers who are not within the definition of 'acceptable medical sources.'" *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017); *see* 20 C.F.R. §§ 404.1502(a), (d); 416.902(a), (d). At the time of plaintiff's application, physician assistants and licensed clinical social workers were defined as "other sources," they were not considered acceptable medical sources and were entitled to less deference.[4] Social Security Ruling 06-03p, 2006 WK 2329939, at *2 (Aug. 9, 2006). While not entitled to the same deference as an acceptable medical source,

---

[4] "The Social Security regulations provide an out-dated view that consider a nurse practitioner as an 'other source.'" *Popa v. Berryhill*, 872 F.3d 901 (9th Cir. 2017) (as amended). Had plaintiff brought this case after the March 27, 2017 rule change, PA Orchard would be considered an acceptable medical source.

statements from other sources cannot be disregarded without comment. *Tobeler v. Colvin*, 749 F.3d 830, 833-34 (9th Cir. 2017).

Plaintiff contends that the ALJ failed to identify a legally sufficient basis, supported by substantial evidence in the record to reject the opinions of Theo Orchard and Jeremy Springer. An ALJ may discount testimony from other sources if the ALJ gives germane reasons for doing so. *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Additionally, "[t]he ALJ is responsible for resolving conflicts in the medical record." *Carmickle*, 533 F.3d at 1164. "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999).

### A. Theo Orchard, PA

Plaintiff avers that the ALJ erred by partially discounting Theo Orchard's opinion testimony. PA Orchard completed a medical evaluation for plaintiff in which he concluded that plaintiff could sit for four hours, stand or walk for two to three hours in an eight-hour day, and occasionally lift 10 pounds or less. Tr. 1071-72. The medical evaluation also stated that plaintiff would miss four or more work days a month. Tr. 1073. The ALJ gave "little weight" to PA Orchard's medical evaluation, finding that the listed limitations were excessive and "unsupported in the record." Tr. 28. Specifically, the ALJ noted that plaintiff's ability to travel independently, drive, use a computer, and complete other activities such as cooking, laundry, and cleaning were inconsistent with PA Orchard's opinion that plaintiff was extremely limited. *Id.* The ALJ also took issue with PA Orchard's reliance on plaintiff's reports of migraine headaches. *Id.* However, as explained above, the ALJ erred when

discounting plaintiff's subjective symptom testimony regarding her migraine symptoms and PA Orchard's reliance on these symptoms cannot be considered a proper basis for discounting his opinion.

Plaintiff argues that the ALJ improperly discounted PA Orchard's limitational assessment because the ALJ failed to explain how any of the plaintiff's daily activities indicated a greater level of functioning than that described in PA Orchard's opinion. The ALJ's findings must be upheld if supported by reasonable inferences drawn from the record. *Batson*, 359 F.3d at 1193. Moreover, if the ALJ's interpretation of the evidence is rational it is immaterial that the evidence may be "susceptible [to] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), *citing Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Therefore, I find that the ALJ provided a germane reason to partially discredit this testimony, namely that the limitations described were not support by the record as a whole. There is substantial evidence in the record that plaintiff was physically able to prepare meals, clean her bathroom and kitchen, and do her laundry. Tr. 432.

Here, the ALJ reasonably inferred that plaintiff's impairments were not so severe as to limit her to standing only two to three hours a day when the plaintiff could cook, clean, and do laundry. *Id.* The ALJ properly weighed PA Orchard's opinion.

### A. *Jeremy Springer, LCSW*

Plaintiff contends that the ALJ erred by discounting part of Jeremy Springer's opinion testimony. The ALJ gave only partial weight to Mr. Springer's opinion letter. Tr. 29. In particular, the ALJ took issue with Mr. Springer's opinions that plaintiff's mental health symptoms were highly resistant to improvement and would likely

require her to miss half or more of her scheduled work days. *Id.* The ALJ concluded these opinions were inconsistent with other evidence in the record. *Id.* The ALJ noted that plaintiff's condition had improved with medication and treatment. Tr. 28, 29. As discussed above, this reasoning is supported by substantial evidence in the record. Therefore, in finding that Mr. Springer's testimony was not supported by objective evidence in the record, the ALJ provided germane reasons to only partially credit this testimony.

Furthermore, the ALJ gave weight to Mr. Springer's assessment that plaintiff had significant social difficulties and some difficulties with concentration, Tr. 29, and the ALJ accounted for these limitations in the RFC, Tr. 24. The ALJ only discounted the parts of Mr. Springer's opinion that were not supported by the objective evidence.

IV. *Shoulder Impairment*

Plaintiff argues that the ALJ erred by failing to account for plaintiff's shoulder impairment in the RFC assessment. An RFC is formulated by considering all medically determinable impairments, including those impairments which are found "not severe" at Step Two in the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(2), (e); 416.945(a)(2), (e). In fact, the Ninth Circuit has clarified that "[step two] is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017). The ALJ must consider the "total limiting effects" of *all* medically determinable impairments, both "severe" and "non-severe", including the effect of pain. 20 C.F.R. §§ 404.1545(e); 416.945(e); *see Valentine v. Comm'r of Soc. Sec.*

*Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

However, the ALJ need only include limitations in the RFC that are "medically determinable" and supported by the evidence. *See Batson*, 359 F.3d at 1197. The existence of a condition does not necessitate that the ALJ include any specific limitation in her RFC finding. *See Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). ("The mere diagnosis of an impairment" is not sufficient to sustain a finding of disability"). The Court therefore turns to the record to consider whether the ALJ properly discounted plaintiff's shoulder impairment in formulating her RFC.

At the hearing, plaintiff testified that she started experiencing shoulder pain shortly after she had open heart surgery. Tr. 54. Plaintiff described very limited mobility in her right arm and testified that she was unable to lift her right arm above her head. Tr. 55. Plaintiff explained that she often had to break dish washing into two sessions. *Id.* In June 2016, plaintiff saw Dr. Nicholas Phillips for right shoulder pain. Tr. 1059. During this examination, plaintiff exhibited decreased range of motion in her right shoulder and scored a 4/5 in motor strength. Tr. 1061, 1065. Dr. Phillips conducted a right shoulder x-ray and ordered an MRI for further evaluation. Tr. 1062. The x-ray confirmed earlier findings of calcific tendonitis and "probable loose bodies". Tr. 1062, 412, (x-ray revealed "intraarticular loose bodies"), 624-25 (x-ray showing calcific tendinosis in both shoulders). The MRI detected evidence of calcific tendinopathy, but no significant abnormalities. Tr. 1066. During a July visit with Dr. Phillips, plaintiff received a shoulder injection. *Id.*

In August 2016, plaintiff followed up with Dr. Phillips. Pl's. Br. in Supp. of Compl. for Rev. Ex. A (doc. 16-1). During this visit plaintiff underwent another shoulder exam. *Id.* at 2. The doctor noted that plaintiff's right shoulder "demonstrate[d] an obvious deformity" and decreased range of motion. *Id.* Plaintiff reported that the earlier shoulder injection had provided her with no relief. *Id.* at 1. The plaintiff was then scheduled for surgery. *Id.* at 3.

At step two, the ALJ found plaintiff's shoulder impairment was not severe. Tr. 22. The ALJ reasoned that plaintiff's July 2016 MRI scan revealed only calcific tendinopathy without rotator cuff tears, retraction, or muscle atrophy. Tr. 22. While assessing plaintiff's RFC, the ALJ did not mention or reference plaintiff's shoulder complaints or medical history.

The ALJ did not have access to plaintiff's August 2016 examination notes when she rendered her unfavorable decision. Plaintiff submitted these notes to the Appeals Council, and the Appeals Council declined to consider this new evidence. Tr. 2. However, the Court must consider this new evidence "to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162-63 (9th Cir. 2012).

The ALJ erred by failing to take plaintiff's shoulder complaints into account while formulating plaintiff's RFC. The Commissioner argues, despite this new evidence, that in light of the record as a whole the ALJ's decision was supported by substantial evidence. According to the Commissioner, the evidence the ALJ cited in step two of her analysis established a sufficient basis for her to disregard plaintiff's shoulder complaints during the step three RFC assessment. I disagree. The ALJ failed to provide any explanation for completely disregarding plaintiff's shoulder

complaints during her RFC formulation. While it is true that the ALJ found plaintiff's shoulder complaints were not severe, the ALJ made no determination about whether and to what extent plaintiff's shoulder complaints caused plaintiff functional limitations.

Plaintiff argues that this error was harmful because it precludes the jobs that the ALJ identified at step five. Tr. 69. (a person who "could not use their right arm above shoulder level and could only reach in ... all other directions occasionally" would be unable to work as a mail sorter, price marker, and electronics worker). I agree. Plaintiff's new evidence demonstrates that plaintiff's range of motion was substantially decreased, and that the treatment the ALJ based her non-severe determination on had been ineffective. The evidence in the record, including plaintiff's new evidence may have altered the ALJ's RFC findings or precluded plaintiff from the jobs identified by the vocational expert.

## V.    *Credit as True*

Plaintiff asks that the court remand her case for an immediate award of benefits. The Ninth Circuit precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). Under the three-step "credit-as-true" doctrine, the reviewing court must first determine whether the ALJ committed harmful legal error. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015), *as amended* (Feb. 5. 2016). Second, if the court finds such an error it must "review the record as a whole and determine whether it is fully developed, free from conflicts and ambiguities, and all essential factual issues have been resolved." *Id.* (quotation marks omitted).

Third, if the court determines that the record has been fully developed, and there are no outstanding issues left to be resolved, the court must consider whether "the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true." *Id.* (quotation marks omitted).

Here, the first step is satisfied because the ALJ harmfully erred by (1) improperly discrediting plaintiff's subjective symptom testimony regarding her migraine headaches and diabetes, and (2) failing to consider plaintiff's possible shoulder impairment while formulating plaintiff's RFC.

The second step is also satisfied. After reviewing the record as a whole, I find it fully developed and free from conflicts. To begin with, the record clearly demonstrates that plaintiff routinely complained of and was treated for migraine headaches. Although the Commissioner points to a few office visits that the ALJ overlooked while assessing plaintiff's migraine symptom testimony, none of that evidence establishes any conflict with plaintiff's testimony. In fact, several of the Commissioner's citations are for visits where the plaintiff *did* report or was treated for migraines. *See* Tr. 815-39, 846-48, 1075-77. The remaining office visits are not enough to establish that plaintiff routinely failed to report migraines.

Additionally, the record clearly demonstrates plaintiff's persistent inability to comply with her diabetes treatment due to her homelessness and financial insecurity. The Commissioner argues that a conflict in the record exists because plaintiff reported during a November 2015 visit that she could afford her prescriptions and had been taking them regularly since July 2015.[5] Tr. 589. However, the record shows

---

[5] The Commissioner mistakenly asserted that the plaintiff had been able to afford her diabetes medications for a year and a half by the November 2015 visit.

that during that four-month period plaintiff was still having financial difficulties. Tr. 630 (September 2015, plaintiff "having a hard time economically acquiring strips" and "is somewhat limited financially" in her food choices), 643 (October 2015, plaintiff "[r]eports not having money to buy a lot of good foods"). In fact, a month after her November 2015 visit, plaintiff again reported difficulty affording nutritious food and housing insecurity. *See* Tr. 650 ("diet depends on money for food"), 656 (plaintiff searching for housing).

The record shows that plaintiff's chronic homelessness and financial instability are cyclical. Throughout the record plaintiff reports being homeless, without insurance, and unable to afford medications for months before finding temporary housing or insurance coverage, only to experience housing insecurity or lose her insurance again months later. Tr. 332-34 (August 2012, plaintiff unable to afford insulin), 416 (September 2012, "was off all medications for last year after losing insurance"), 412 (November 2012, plaintiff living with cousins, but has no money for healthy food), 550 (October 2013, stable housing), 551 ("moved in with another friend"), 562 (August 2014, "she is homeless again.... Moves every couple days between friends and family members"), 611 (June 2015, without insurance and medications since December 2014), 589 (November 2015, plaintiff back on medications since July 2015). There is no ambiguity or conflict in the record on this point. Further development of the record regarding plaintiff's migraine or diabetes symptoms would serve no further purpose.

While the record may be unclear regarding plaintiff's limitation due to her shoulder complaints, there is no need to remand the case for further proceedings on this point because plaintiff's other symptoms mandate a finding of disability. At the

hearing, the VE testified that "employers generally allow one absence per month" and that "a person who would miss in excess of that on a consistent basis would be precluded from gainful employment." Tr. 68-69. As mentioned, plaintiff testified that she experienced debilitating migraines several times a month, and occasionally as frequently as five days a week. Plaintiff's migraines often lasted several hours or days. Crediting that testimony as true, plaintiff's migraine symptoms would preclude any gainful employment because she would require multiple absences per month. Such a limitation on its own mandates a finding of disability.

Similarly, crediting plaintiff's testimony regarding her diabetes as true, would also mandate a finding of disability. As noted above, plaintiff testified that she experienced fatigue so severe that she struggled to stay awake during the day a few times every week. Without consistent access to treatment and medications, plaintiff would also require multiple days of absences from work each month due to the fatigue diabetes symptoms. Accordingly, the third step is also satisfied.

In sum, the plaintiff has established that she is disabled and has been since August 18, 2012. Her testimony regarding the symptoms of her migraines and diabetes was credible and consistent with the medical evidence. The VE testimony shows that she is ineligible for competitive employment. Remanding this case for further proceedings would only continue to delay effectuating the primary purpose of the Social Security Act and much needed income for plaintiff.

## CONCLUSION

The Commissioner's decision is REVERSED, and the case is REMANDED for immediate award of benefits.

IT IS SO ORDERED.

Dated this 14th day of May 2019.

Ann Aiken
United States District Judge